**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Susan M Levandowski, | No. CV-20-00596-PHX-MTL |
| Appellant, | **ORDER** |
| v. | |
| Helen DiPasquale, | |
| Appellee. | |

Before the Court is Appellant Susan Levandowski's ("Appellant" or "Ms. Levandowski") appeal of Bankruptcy Judge Paul Sala's March 11, 2020 order. (Doc. 1 at 7–8.) The appeal is fully briefed. (Docs. 6, 10, 11.) For the following reasons, the bankruptcy court's decision is affirmed.[1]

**I.  BACKGROUND**

Dr. Joseph DiPasquale ("Dr. DiPasquale"), a non-party to this appeal, and Appellee Helen DiPasquale ("Appellee" or "Ms. DiPasquale") were previously married. Their divorce was finalized in 2001. (Doc. 6 at 43.) At that time, the Arizona Superior Court entered a consent decree dissolving the marriage and ordering Dr. DiPasquale to pay Ms. DiPasquale a spousal maintenance award of $2,600 per month indefinitely. (*Id*.) In 2006, Dr. DiPasquale married Ms. Levandowski, the appellant in the present matter.

In 2007, Dr. DiPasquale and Ms. DiPasquale entered into a stipulated order to

---

[1] Neither party has requested oral argument. The Court believes that oral argument would not significantly aid the decisional process. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearing); LRCiv 7.2(f) (same).

terminate future support obligations. They agreed that the spousal support arrearage totaled $122,200 plus 10 percent interest annually. (*Id*.) Ms. DiPasquale agreed not to execute on the stipulated order if Dr. DiPasquale made $200 monthly payments on the arrearage, maintained premiums on a $250,000 life insurance policy, and provided her with copies of his tax returns. (*Id*.) Dr. DiPasquale ultimately breached the 2007 stipulated order by failing to comply with all three conditions. (*Id*. at 88.)

On October 21, 2015, Ms. DiPasquale filed a petition to enforce the stipulated order in a case before the Family Department of the Arizona Superior Court (the "family court"). (*Id*. at 43, 88.) On appeal, the Arizona Court of Appeals reversed the trial court's determination that Ms. DiPasquale was not entitled to join Ms. Levandowski, her ex-husband's wife, to the case. (*Id*. at 43–44; *DiPasquale v. DiPasquale*, 243 Ariz. 156 (App. 2017)). After the matter was remanded, the family court ruled on July 31, 2018, that the property of Dr. DiPasquale *and* Ms. Levandowski was available to satisfy the stipulated order. Specifically, the family court stated, "[i]n addition to the imputed value of [Ms. Levandowski's] income to [Dr. DiPasquale], the Court separately finds that [Ms. Levandowski]'s income itself is available to [Dr. DiPasquale] to pay spousal maintenance." (Doc. 6 at 90 ¶ 28.) The court found that the amount due on the stipulated order was $249,507.91. (*Id*. at 92 ¶ 1.)

Ms. Levandowski filed a Chapter 7 bankruptcy petition in the U.S. Bankruptcy Court for the District of Arizona (the "bankruptcy court") on September 25, 2018. She received a bankruptcy discharge on January 8, 2019. (*Id*. at 44.) Thereafter, Ms. DiPasquale began to garnish Ms. Levandowski's wages to collect on the stipulated order. On December 27, 2019, Ms. DiPasquale filed a motion instituting the present matter.[2] The parties held an initial hearing on January 22, 2020. (*Id*. at 77.) A continued hearing was held on March 5, 2020, at which time Judge Sala issued an oral ruling in favor of Ms. DiPasquale. (*Id*. at 41–51.)

---

[2] The motion at issue was the "Motion Re: Applicability of the Automatic Stay on Judgment in Favor of Helen DiPasquale," Doc. 33 in *In re Levandowski*, No. 2:18-bk-11651-PS (Bankr. D. Ariz. Dec. 27, 2019).

- 2 -

A written order followed on March 9, 2020. (Doc. 1 at 7.) It asserted that the question before the Court was whether Ms. Levandowski's discharge "enjoined Ms. DiPasquale's collection of her spousal support claim against Dr. Joseph DiPasquale from the post-petition community property of Dr. DiPasquale and the Debtor." (*Id*. at 7.) Upon consideration of the filings, the arguments of counsel, at for the reasons set forth at the March 5 hearing, the bankruptcy court concluded that the "discharge does not enjoin Ms. DiPasquale from pursuing collection of her Updated Judgment dated May 11, 2016, as authorized under Arizona law, from the post-petition community property of Dr. DiPasquale and the Debtor." (*Id*. at 8.)

Appellant timely appealed to this Court. (Doc. 1). The appeal is now ripe for review. (Docs. 6, 10, 11.)

## II.     LEGAL STANDARD

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 158(a), which provides that "district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a)(1). A district court reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *See In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010). The Court must accept the bankruptcy court's findings of fact unless the Court "is left with the definite and firm conviction that a mistake has been committed[.]" *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009). The Court reviews the evidence in the light most favorable to the prevailing party. *Lozier v. Auto Owners Ins. Co.*, 951 F.2d 251, 253 (9th Cir. 1991); *In re Jake's Granite Supplies, L.L.C*, 442 B.R. 694, 699 (D. Ariz. 2010).

## III.    DISCUSSION

Appellant raises three issues on appeal. The first is whether the bankruptcy court erred in holding that Dr. DiPasquale's support obligation is a "debt owed by the community." The second is whether a domestic support obligation can be nondischargeable

to a new spouse under Section 523(a)(5) of the Bankruptcy Code.[3] The third is whether the bankruptcy court erred by "refusing" to rule on the issue of whether a domestic support obligation of a non-filing spouse is subject to the community property waiver in § 524(a)(3). (Doc. 6 at 4.) The Court addresses these issues in turn.

### A.   Debt Owed by the Community

Appellant first argues that the bankruptcy court erred in holding that Dr. DiPasquale's domestic support obligation to his ex-wife was a "debt owed by the community"—that is, the "community" of himself and his current wife, Ms. Levandowski—under Arizona law. (Doc. 6 at 8.) For the following reasons, the Court finds that the bankruptcy court did not err.

#### 1.   Prior Family Court Ruling

Courts apply a two-part test to determine the "dischargeability of a debt as to an innocent spouse." *In re Rollinson*, 322 B.R. 879, 881 (Bankr. D. Ariz. 2005). First, "the court must determine whether the debt is a community debt or is a sole and separate debt of the guilty spouse. This is purely a question of state law." *Id*. Second, "[o]nce a debt has been determined to be a community debt pursuant to state law," the remaining issue is the "scope of the discharge." *Id*. This second step is governed by federal bankruptcy law. *Id*.

The first issue, accordingly, is whether the property at issue is a "community debt." The bankruptcy court ruled that Ms. Levandowski's discharge did not enjoin Ms. DiPasquale from pursuing collection from the "post-petition community property" of Dr. DiPasquale and Ms. Levandowski. (Doc. 1 at 8.) In his oral ruling, Judge Sala stated that the family court's "July 2018 order made clear that the obligations evidenced by the stipulated judgment w[ere] collectible from the community assets of Dr. DiPasquale and Ms. Levandowski." (Doc. 6 at 46.) As a result, "based upon the ruling from [family court] Judge Cooper that this is a debt owed by the community and that a community claim is one for which property of the kind . . . specified in Section 541(a)(3) as liable community

---

[3] All future references to the Bankruptcy Code are to provisions of Title 11 of the United States Code.

property is liable. So I'm finding this is a community claim." (*Id*. at 47.)

Appellant argues that this was an error because the Superior Court "never held that the debt in question was a community debt, nor could it." (Doc. 6 at 8.) In a July 31, 2018 order, Judge Cooper ruled:

> Pursuant to *Cummings v. Cummings*, 182 Ariz. 383, 897 P.2d 685 (App. 1994), the value of [Ms. Levandowski]'s financial contributions to the community is imputed to [Dr. DiPasquale]. Therefore, every month, [Dr. DiPasquale] has had the imputed benefit of her salary ($7,350/month) plus his Social Security ($2,086/month) pre-tax to pay $200 per month. He paid nothing.
>
> . . .
>
> In addition to the imputed value of [Ms. Levandowski]'s income to [Dr. DiPasquale], the Court separately finds that [Ms. Levandowski]'s income itself is available to [Dr. DiPasquale] to pay spousal maintenance. Pursuant to *Gardner v. Gardner*, 95 Ariz. 202, 203, 388 P.2d 417, 418 (1964), the entire community, including the income of a new spouse, is available to satisfy an alimony obligation arising from a prior marriage. As stated by the Arizona Supreme Court,
>> Essentially, our decision in this case rests on public policy. The obligations of marriage cannot be thrown aside like an old coat when a more attractive style comes along. An alimony debt from a previous marriage can be satisfied out of the community property. *Id*. at 204, 388 P.2d at 418.

(Doc. 6 at 89–90 ¶¶ 26, 28.) Appellant argues that this ruling "could not" be a determination that Dr. DiPasquale's support obligations are a community debt. (Doc. 6 at 8–9.) She states that, under Arizona law, a community debt must be "incurred during the marriage" and "intended to benefit the community." *Schlaefer v. Fin. Mgmt. Serv., Inc.*, 196 Ariz. 336, 339 ¶¶ 10, 12 (Ct. App. 2000) (citation omitted). Further, the debt at issue predated her marriage to Dr. DiPasquale by five years and was not incurred to benefit the community. (Doc. 6 at 9–10.) Therefore, she argues, Dr. DiPasquale's support obligations cannot form a *community* debt under Arizona law.

The Court is not convinced by these arguments. First, the Court agrees with the bankruptcy court that the family court "made clear" that the stipulated order was collectible "from the community assets of Dr. DiPasquale and Ms. Levandowski." (Doc. 6 at 46.) The finding, for example, that "[Ms. Levandowski]'s income itself is available to [Dr. DiPasquale] to pay spousal maintenance" does not leave room for the level of nuance that Appellant suggests. (*Id.* at 89.)

Further, Appellant may not relitigate the family court's conclusion in bankruptcy court. (Doc. 10 at 10.) State court judicial proceedings "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738. The *Rooker-Feldman* doctrine[4] prevents cases brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The bankruptcy court has acknowledged that "the *Rooker-Feldman* doctrine applies where an appeal is taken from a state court to a lower federal court. Here, the Bankruptcy Court is a lower federal court. If the Debtor is unhappy with the outcome of the State Court's decision, there are appropriate avenues in which the Judgment can be reviewed, but this Court is not one of those avenues." *In re Wilkson*, No. 3:17-AP-378-DPC, 2017 WL 3888288, at *3 (Bankr. D. Ariz. Sept. 5, 2017) (citation omitted). The *Rooker-Feldman* doctrine also prohibits "de facto appeals" when "a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010) (citation omitted).

The bankruptcy court properly acknowledged that it could not make "a collateral attack" on the family court's ruling. (Doc. 6 at 49.) The bankruptcy court also stated that

---

[4] The doctrine refers to two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

- 6 -

"the issue before me is can community property be reached post Ms. Levandowski's discharge. Whatever the state court determined the community property is, that the state court's determination. I don't determine what is or isn't community property." (*Id.* at 37.) Appellant's counsel also confirmed that his client's "objection is to the portion of Judge Cooper's ruling that said Ms. Levandowski's income is part of the community property that can be attached." (*Id.* at 39.) The Court agrees with the bankruptcy court and Appellee that Ms. Levandowski brought a de facto appeal of the family court's ruling, such that "the *Rooker-Feldman* doctrine applies in this case." *In re Wilkson*, 2017 WL 3888288, at *4.

As the bankruptcy court recognized, the appropriate relief would have been for Ms. Levandowski to appeal the family court ruling, rather than attempt to relitigate it in bankruptcy court. (Doc. 6 at 49.) ("So if Ms. Levandowski thinks that issue is incorrectly ruled, then she's going to have to go to state court, I believe, to either clarify Judge Cooper's ruling if it's – if that's still available or not."). *See also in re Wollner*, No. 2:20-AP-00045-DPC, 2020 WL 2764693, at *4 (Bankr. D. Ariz. May 26, 2020) ("This is exactly what the *Rooker-Feldman* doctrine determines to be an inappropriate appellate review of a state-court judgment . . . The proper venue for appellate review of a state-court judgment is that state's appellate courts."). She did not do so.[5] (Doc. 10 at 7.)

Because the family court previously determined that Dr. DiPasquale's spousal maintenance obligations constituted a community debt under Arizona law—a determination which Appellant did not appeal—the bankruptcy court was bound by that determination. *See Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 860 (9th Cir. 2008) (finding that the appellants' claim constituted a "de facto appeal of a state court decision and are therefore barred by the *Rooker-Feldman* doctrine" because "such claim was itself separately litigated before and rejected by an Oregon state court"). In light of *Rooker-Feldman* and general comity principles, the bankruptcy court did not err in determining that Dr. DiPasquale's spousal support obligation constituted a community debt based on

---

[5] Appellee asserts that although Ms. Levandowski did not appeal the ruling, Dr. DiPasquale did; his appeal was dismissed. (Doc. 10 at 8.)

- 7 -

the family court's prior ruling.[6]

### 2. Arizona Court of Appeals Order

Appellant also asserts, as a secondary argument, that the bankruptcy court erred because the "Arizona Court of Appeals has already spoken definitively" on whether Dr. DiPasquale's obligation is a community debt. (Doc. 6 at 10.) The Court is not convinced by this argument, either. In *DiPasquale v. DiPasquale*, 243 Ariz. 156 (Ct. App. 2017), the Arizona Court of Appeals reversed the prior denial of Ms. DiPasquale's motion for leave to join Ms. Levandowski as a party. The appellate court remanded, resulting in the 2018 order addressed in the previous section. In reversing and remanding, the Arizona Court of Appeals noted that allowing Ms. DiPasquale to file the Rule 33 petition "would not, and as a matter of law could not, convert his premarital spousal maintenance into community debt." *Id*. at 158. In the present matter, Appellant interprets this as a "definitive" statement that the Court of Appeals "already decided" that Dr. DiPasquale's support obligation "was not a community debt under Arizona law." (Doc. 6 at 11.)

The Court agrees with Appellee that the Arizona Court of Appeals did not determine whether the premarital spousal maintenance was a community debt. Rather, it concluded that the mere joinder of Ms. DiPasquale to the action would not, in itself, create a community debt. The Court of Appeals found that because "both spouses have a right to litigate the extent of the debtor spouse's contribution to the community, due process requires a finding of the amount a debtor contributed to the marital property, and the opportunity for debtor's spouse to contest same." *Id*. at 158 ¶ 12. It then left this determination to the family court on remand. *Id*. ¶ 13. Contrary to Appellant's argument, the Arizona Court of Appeals did not determine whether Dr. DiPasquale's spousal

---

[6] The Court notes that, as Appellee's counsel pointed out at oral argument before the bankruptcy court, the marital community between Dr. DiPasquale and Ms. Levandowski existed at the time that the family court entered its July 31, 2018 order. (Doc. 6 at 72.) Accordingly, Appellee argues, Appellant is incorrect in stating that the debt at issue was not incurred during the marriage. Although this argument appears to be compelling, the Court need not resolve it in light of its finding that the bankruptcy court properly declined to address the merits of this issue in light of the family court's ruling.

- 8 -

maintenance order was a community debt. For this independent reason, the bankruptcy court did not err.

**B.     Dischargeability**

Having found that Dr. DiPasquale's support obligations were a community debt, the bankruptcy court turned to the second prong of the *Rollinson* test: the "scope of the discharge." *In re Rollinson*, 322 B.R. at 881. As noted, this inquiry is governed by bankruptcy law. *Id*. Appellant argues that the bankruptcy court erred in determining that the debt is nondischargeable as to Ms. Levandowski. Appellee argues that because it is undisputed that the community claim is nondischargeable as to Dr. DiPasquale, it is also nondischargeable to Ms. DiPasquale. The Court agrees with Appellee.

Section 524(a)(3) of the Bankruptcy Code provides:

> A discharge in a case under this title operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, **except a community claim that is excepted from discharge under section 523**, 1192, 1228(a)(1), or 1328(a)(1), **or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor**, whether or not discharge of the debt based on such community claim is waived.

11 U.S.C. § 524(a)(3) (emphasis added). Put another way, the bankruptcy court noted that in the context of this case, "Ms. Levandowski's discharge would prevent collection of . . . post-petition community property on account of any community claim unless the community claim is exempted from discharge under Section 523 in this case." (Doc. 6 at 46.) Accordingly, the Court first examines whether the debt to Ms. DiPasquale is a community claim that is exempted from discharge under § 523 of the Bankruptcy Code.

### 1. Domestic Support Obligation

As a general rule, bankruptcy "gives people from all walks of life a 'fresh start.'" *Rivera v. Orange Cty. Prob. Dep't*, 832 F.3d 1103, 1105–06 (9th Cir. 2016) (quoting *Harris v. Viegelahn*, 575 U.S. 510, 135 S. Ct. 1829, 1835 (2015)). A "debtor who successfully navigates the bankruptcy process is ordinarily entitled to a discharge of all pre-petition debts." *Id.* (citation omitted). Some debts, however, are not eligible for discharge. Section 523 of the Bankruptcy Code provides various exemptions from discharge. Because a "major policy objective" of the Bankruptcy Code is to provide the "honest but unfortunate" debtor with a fresh start, the exemption provisions are "interpreted strictly in favor of debtors." *In re Huh*, 506 B.R. 257, 262 (B.A.P. 9th Cir. 2014). That said, courts "must limit the provisions granting exceptions to discharge to those plainly expressed in § 523(a)." *In re Christoff*, 527 B.R. 624, 629 (B.A.P. 9th Cir. 2015).

One such exception, provided in § 523(a)(5), exempts from discharge a "domestic support obligation"—"the financial obligations upon which family members and former family members rely." *Rivera*, 832 F.3d at 1106; 11 U.S.C. § 523(a)(5). The Bankruptcy Code defines a "domestic support obligation" as a debt that is "owed to or recoverable by a spouse, former spouse, or child of the debtor. . .," "in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor. . .," and "established or subject to establishment before, on, or after the date of the order for relief." 11 U.S.C. § 101(14A). This exemption "provides a way to leave one's debts, but not one's most fundamental family obligations, behind." *Rivera*, 832 F.3d at 1106.

Here, the bankruptcy court found that the underlying stipulated judgment is not a domestic support obligation of Ms. Levandowski's. (Doc. 6 at 47.) This ruling is correct as a matter of law because Ms. DiPasquale is not herself a "spouse, former spouse, or child of" Ms. Levandowski. 11 U.S.C. § 101(14A). Thus, Judge Sala concluded, § 523(a)(5) would not "bar the discharge of Ms. Levandowski's obligation, if any, to [Ms. DiPasquale] here." (Doc. 6 at 47.) Neither party takes issue with this finding in the present appeal. (Doc. 10.)

The next inquiry, accordingly, is whether the claim would be exempted from discharge "in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse [Dr. DiPasquale] commenced on the date of the filing of the petition in the case concerning the debtor [Ms. Levandowski]." 11 U.S.C. § 524(a)(3). The bankruptcy court found that "there's no real dispute" that the stipulated judgment is a "domestic support obligation of Dr. DiPasquale." (Doc. 6 at 48.) Indeed, at oral argument, Appellant's counsel conceded that the stipulated judgment is a domestic support obligation as to Dr. DiPasquale. (*Id*. at 36) (counsel agreed that "Ms. DiPasquale's claim against Dr. DiPasquale . . . would be not discharged if Dr. DiPasquale filed a bankruptcy"). Appellant also stated as much in her opening brief, noting, "[n]either party is arguing [Ms. DiPasquale] cannot collect on [Dr. DiPasquale's] DSO by garnishing [Dr. DiPasquale's] wages directly." (*Id.* at 16.) Accordingly, the bankruptcy court concluded that Dr. DiPasquale's domestic support obligation "would be excluded from discharge pursuant to Bankruptcy Code Section 523(a)(5), had Dr. DiPasquale filed a bankruptcy petition on the same date" as did his current wife, Ms. Levandowski. (*Id*. at 48.) "Having concluded that Dr. DiPasquale's obligation to Ms. DiPasquale is a domestic support obligation that is collectible from the community assets of Dr. DiPasquale and Ms. Levandowski," the bankruptcy court found that the "community discharge would not prevent collection efforts here." (*Id*.)

This conclusion is supported by Ninth Circuit case law. For example, the bankruptcy court cited *In re Rollinson* for the proposition that a community debt exempted from discharge as to one spouse is exempted from discharge as to the community. 322 B.R. at 885; Doc. 6 at 47. Further, in *In re Bush*, No. ADV 03-00824-PHX-SSC, 2005 WL 6960185 (B.A.P. 9th Cir. Dec. 15, 2005), the Bankruptcy Appellate Panel of the Ninth Circuit noted that "[a]fter-acquired community property remains free from prebankruptcy community claims so long as neither spouse has committed an act creating a nondischargeable debt." *Id*. at *4 (citation and internal quotations omitted). The underlying policy is that the "guilty spouse should not be able to hide behind the innocent spouse's

discharge and [b]oth spouses will suffer by reason of one spouse's prior 'sins' insofar as after-acquired jointly owned community property is concerned." *Id.* (citing *Judge v. Braziel (In re Braziel)*, 127 B.R. 156, 158 n. 9 (Bankr.W.D.Tex.1991)). *See also In re Davies*, 494 B.R. 453, 465 (Bankr. C.D. Cal. 2013) ("[A]ny of [husband's] obligations to Plaintiff determined to be nondischargeable, would also be nondischargeable against post-petition community property."); *In re LeSueur*, 53 B.R. 414, 416 (Bankr. D. Ariz. 1985) (The Bankruptcy Code's "clear policy is that the economic sins of either spouse shall be visited upon the community when a discharge is denied. . . A marital community whose actions do not conform to the standards imposed by law should not earn the same discharge received by joint debtors who did not engage in proscribed conduct.").

Appellant argues that the bankruptcy court erred in extending nondischargeability to her income under § 523(a)(5). She argues that the bankruptcy court's citation to *Rollinson* was "inapplicable here in several ways." (Doc. 6 at 14.) First, Appellant argues that *Rollinson* did not analyze whether a domestic support obligation under § 523(a)(5) is dischargeable but, instead, dealt with instances of fraud pursuant to § 523(a)(4). The Court is not persuaded by this argument because nothing in *Rollinson* indicates that the proposition cited involved *only* the fraud exception, as opposed to dischargeability exceptions under § 523 generally.[7] Appellant also argues that *Bush* is "just as inapplicable as *Rollinson*" because it is an unpublished decision that does not add to the reasoning of *Rollinson*. (Doc. 6 at 15) (citing *Bush,* 2005 WL 6960185). But in light of *Rollinson* and other authorities, the Court would reach the same conclusion even absent *Bush*. This argument is unpersuasive, as well.

Appellant also argues that the ruling is impermissible in light of *In re Gunness*, 505 B.R. 1 (B.A.P. 9th Cir. 2014). (Doc. 6 at 13.) In that case, the Bankruptcy Appellate Panel addressed whether a domestic support obligation in the form of attorney's fees was

---

[7] Appellant also argues that *Rollinson* does not render Dr. DiPasquale's domestic support obligations nondischargeable as to Ms. Levandowski because a court must first determine that a debt is a community debt, and in this case it is not. For the reasons previously discussed, the Court has rejected this argument.

- 12 -

dischargable under either §§ 523(a)(5) or 523(a)(15). The panel found that the debt was dischargeable because it was not owed to or recoverable by a "spouse, former spouse or child" of the debtor under these provisions. *Id*. at 3. Similarly to in the present case, the debtor's husband in *Gunness* owed attorney's fees to his ex-wife. The panel noted that it would not "imput[e] a familial relationship between two unrelated parties." *Id*. at 7. This decision is not helpful to Appellant. Indeed, in the present case, the parties all appear to agree that the debt to Ms. DiPasquale would be dischargeable as to Ms. Levandowski *alone* because she is not a "spouse, former spouse or child" of Ms. DiPasquale. 11 U.S.C. § 523(a)(5). Rather, the bankruptcy court and this Court found nondischargeability through the lens of her husband, Dr. DiPasquale, based on the prior finding of the existence of a community debt. But because "community debt" was not at implicated in *Gunness*, the case is not dispositive here.

For all of these reasons, the bankruptcy court did not err in holding that the stipulated judgment is nondischargeable as to Ms. Levandowski under § 523(a) of the Bankruptcy Code.

### C. "Refusal" to Rule

Appellant also argues that the bankruptcy court impermissibly "side-stepped" the question of whether under § 524(a)(3), the "bankruptcy discharge bars further collection efforts" of the domestic support order from Ms. Levandowski's wages. (Doc. 6 at 16-17.) Appellant cites the portion of the bankruptcy court's ruling that "to a certain extent punts one issue because I don't think I'm the right person to hear it which is to what extent does marital community property exist . . . under Arizona law Ms. DiPasquale can pursue." (Doc. 6 at 49.) The bankruptcy court ruled, accordingly, that "to the extent community property is available under state law, then I think Bankruptcy Code Section 524(a)(3) means that the discharge granted to Ms. Levandowski in this case does not insulate the community property from further collection efforts." (*Id*. at 49–50.) Appellant argues that the bankruptcy court committed reversible error in so ruling. The Court does not agree.

The bankruptcy court clarified the issue before it multiple times. At the January 22,

2020 hearing, the court asked the parties to confirm that the pending issue was "whether [Ms. Levandowski's] discharge bars further collection of the support judgment to which the [Ms. Levandowski] is not a party." (Doc. 6 at 58–59.) Both parties agreed. (*Id.*) Judge Sala specifically stated that he sought to clarify the pertinent issue because "[u]ltimately, I'm going to rule. And when I rule, I want the understanding that that's ruling [on] what's in these motions so I don't have somebody coming back and saying, Judge, you didn't rule on this, or, on an appeal, the appellate court says, well, you know, the bankruptcy judge obviously didn't rule on these other four issues that were pending in these briefs." (*Id.* at 58.)

At the parties' next hearing, on March 5, 2020, Judge Sala again clarified the relevant issue. He asked if Appellant consented to a ruling "on the narrow issue we talked last time which is does the discharge affect the ability to collect against post-petition community property." (*Id.* at 28–29.) Appellant's counsel responded, "Correct, Your Honor." (*Id.* at 29.) Judge Sala confirmed this scope in his oral ruling and in the subsequent written order, which states that both parties, "through counsel, confirmed that the question before the Court is whether Debtor's discharge enjoined Ms. DiPasquale's collection of her spousal support claim against Dr. Joseph DiPasquale from the post-petition community property of Dr. DiPasquale and the Debtor." (Doc. 6 at 96.)

This Court finds that the bankruptcy court directly addressed the issue before it when it ruled that Ms. Levandowski's discharge "does not enjoin Ms. DiPasquale from pursuing collection of her Updated Judgment dated May 11, 2016, as authorized under Arizona law, from the post-petition community property of Dr. DiPasquale and the Debtor." (*Id.* at 97.) The bankruptcy court's reference to "as authorized under Arizona law" was not, as Appellant argues, an impermissible "side-step," but rather, for the reasons previously stated, a recognition of the family court's prior ruling.

Appellant also argues that the bankruptcy court erred in ruling that to determine whether Ms. DiPasquale's garnishment of Ms. Levandowski's wages would violate the discharge injunction would constitute a "collateral attack on [the Superior Court's] ruling."

(Doc. 6 at 18, 49.) Appellant argues that this was an error because "[s]tate laws and actions which are inconsistent with federal bankruptcy law are preempted by the Code." (*Id*. at 19) (citing *Miller v. Nat'l Franchise Servs., Inc.*, 167 Ariz. 403, 405 (Ct. App. 1991)). Therefore, Appellant argues, "the Bankruptcy Court was not being asked to collaterally attack the judgment, but, instead was being asked to determine the status of Arizona law to analyze the discharge injunction." (Doc. 6 at 19.)

Appellant is correct that, as a general matter, bankruptcy courts may interpret and apply state law. But "[n]eedless decisions of state law" by bankruptcy courts "should be avoided." *In re Casamont Invs., Ltd.*, 196 B.R. 517, 524 (B.A.P. 9th Cir. 1996). Here, as noted, the state court already ruled on a consequential issue in this case. Rather than determine the "status" of Arizona law, the bankruptcy court decided that it "should not and will not second guess the state court." *In re Kim*, No. 99-03303, 2003 WL 22939483, at *5 (Bankr. D. Haw. Jan. 10, 2003). *See also In re Samuels*, 273 F. App'x 691, 693 (9th Cir. 2008) (rejecting an argument that the bankruptcy court should have reassessed the underlying state court ruling because the "state court's analysis was lacking"). The bankruptcy court did not err in this respect, either.

## IV.     CONCLUSION

Accordingly,

**IT IS ORDERED affirming** the Bankruptcy Court's March 9, 2020 Order (Doc. 1 at 7–8) in its entirety.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment in favor of Appellee Helen DiPasquale and to close this case.

Dated this 11th day of March, 2021.

Michael T. Liburdi
United States District Judge